IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:07 CR-0176 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| WADE RANDALL PINE | : | |

## MEMORANDUM

Presently before the court is defendant's *pro se* motion (Doc. 59) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] Defendant Wade Randall Pine ("Pine") contends that his attorney provided ineffective assistance of counsel resulting in a violation of his constitutional rights.[2] For the reasons that follow, Pine's motion (Doc. 59) will be denied.

I.   **Statement of Facts & Procedural History**

On May 2, 2007 a federal grand jury returned a two-count criminal indictment charging Pine with offenses related to the possession of child pornography. (Doc. 1). On August 27, 2007, after entering into a plea agreement with the government (Doc. 24), Pine pled guilty to Count 2 of the criminal

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] Pine claims that his counsel failed: (1) to explain the plea agreement to him (Doc. 67, at 13); (2) introduce objections and critical evidence which purportedly would have resulted in a downward departure (Doc. 61, at 2-3; Doc. 55, at 6, 15); (3) to confront and cross-examine witnesses (Doc. 61, at 4-5; Doc. 55, at 6, 15); (4) to select appropriate witnesses, including competent qualified expert witnesses for sentencing (Doc. 61, at 2; Doc. 55, at 15, 24); and (5) that the cumulative effect of all these errors was prejudicial. (Doc. 61, at 5).

indictment admitting to possessing in excess of six hundred (600) digital images and video files in the form of films, computer disks, and other material that contained images of child pornography. See 18 U.S.C. §2252A(a)(5)(B) and §2252A(b), (Docs. 29, 51). In his plea agreement, Pine waived any requirement that a jury determine or make findings of fact affecting the sentencing range. (Doc. 24, ¶16).

On March 14, 2008, the district court entered judgment on Count Two of the indictment. (Doc. 46). The court sentenced Pine to 78 months incarceration (a sentence at the low end of the sentencing range), fines and fees of $600, and ten years of supervised release. (Id.) Pine appealed his sentence to the Third Circuit Court of Appeals on March 21, 2008. (Doc. 47). The Third Circuit affirmed the judgment of conviction and sentence on March 30, 2009. United States v. Pine, 318 Fed. App'x 84 (3d Cir. 2009). Pine filed a writ of certiorari to the United States Supreme Court, which was denied on October 13, 2009. On October 12, 2010, Pine timely filed the instant motion (Doc. 55) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion has been fully briefed and is ripe for disposition.

**II.    Discussion**

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is the appropriate vehicle by which federal prisoners challenge the legality of a conviction or sentence. See In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997) (stating that a § 2255 motion is "the usual avenue for federal prisoners seeking to challenge the legality of their confinement"). When a federal prisoner seeks §2255 habeas relief,

he must file the motion in the district court where he was convicted and sentenced. See 28 U.S.C. § 2255 (stating that the motion must be filed in "the court which sentenced" the defendant). Where the record affirmatively indicates that a petitioner's § 2255 claim for relief is without merit, the claim may be decided on the record without a hearing. See Virgin Islands v. Nicolas, 759 F.2d 1073, 1075 (3d Cir. 1985).[3] In his § 2255 Motion, Pine alleges that he was represented by ineffective counsel, and as a result, his conviction and sentence should be vacated.

A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a motion, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient representation was prejudicial. See id. at 687-88. In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. See id. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. United States v. Saunders, 165 F.3d

---

[3] The court declines to hold a hearing on Pine's § 2255 motion. As discussed infra, his claim for relief is without merit.

248, 253 (3d Cir. 1999). To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in any particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697.

A determination of inadequate assistance of counsel necessarily relies on consideration of the totality of the unique circumstances in each case. United States v. Baynes, 687 F. 2d 659, 665 (3d Cir. 1982). Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)).

In the instant matter Pine complains that his attorney provided ineffective assistance by failing to: (1) explain the plea agreement; (2) introduce objections and critical evidence which purportedly would have resulted in a downward variance; (3) cross-examine or confront witnesses on his behalf; (4) choose competent expert and lay witnesses; and (5) that the cumulative effect of these errors prejudiced him.[4]

### A.     Counsel's Alleged Failure to Explain the Plea Agreement

First, Pine alleges that his waiver of a jury determination of facts affecting the guideline range was unknowing and involuntary because his counsel failed to

---

[4] In his § 2255 motion, Pine provides a laundry list of alleged errors by counsel. (Doc. 55, at 6, 15, 24). The court has grouped them into these five alleged errors.

explain the plea agreement to him. (Doc. 61, at 3-4; Doc 67, at 11-12, 13-14). It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." United States v. Mabry, 536 F.3d 231, 236 (3d Cir. 2008). To confirm that the defendant understands that by his pleading guilty he waives certain rights, the court engages the defendant in a colloquy. See Jells v. Ohio, 498 U.S. 1111, 1113; (1991) (Marshall, J., dissenting). A waiver of rights is enforceable when entered knowingly and voluntarily and enforcement does not effect a miscarriage of justice. See Mabry, 536 F. 3d at 237. The plea agreement signed by Pine states:

> In light of the June 24, 2004 ruling of the Unites States Supreme Court in *Blakely v. Washington*, the defendant agrees to waive any requirement that a jury determine the sentencing range or make findings of fact affecting the sentencing range under the U.S. sentencing guidelines. The defendant further agrees that the sentencing judge may undertake that function, making all decisions and findings relative to his sentencing range and Criminal History category.

(Doc. 24, ¶ 16). The language of the written plea agreement expressly indicates Pine's waiver of jury sentencing and agreement that the judge will determine the sentencing range. Pine signed the plea agreement thus attesting to his understanding and voluntary assent. (Doc 24, at 11).

Additionally, during the change of plea hearing the court specifically asked Pine whether his attorney fully explained the terms and conditions of the plea agreement before Pine signed the document. Pine answered "Yes, sir." (Change of Plea Hearing Transcript, at 5 [hereinafter "Hr'g Tr."]). After inquiry by the court,

Pine affirmed his desire to give up his right to a jury trial and to enter a plea of guilty. (Hr'g Tr., at 5). Pine answered "Yes, sir." when the court asked whether Pine felt he had enough time to speak with his attorney regarding the nature of the plea agreement. (Id.) Pine also affirmed to the court that he and his attorney had spoken about the guideline range. (Id. at 9). In totality, Pine's written and verbal statements indicate that Pine knowingly and voluntarily entered the plea agreement and waived his right to a jury trial and his right to have a jury determine the sentencing range or to make findings of fact affecting the sentencing range. Thus, Pine cannot demonstrate that he entered the plea agreement unknowingly or involuntarily. Pine's own statements and actions refute his claim that counsel failed to explain the plea agreement.

### B. Counsel's Alleged Failure to Raise Objections or Introduce Evidence

Second, Pine argues that his attorney's legal services were inadequate due to counsel's purported failure to address evidentiary issues. Specifically, Pine alleges his attorney neglected to raise objections to the government's evidence or to object to the government's concern that he is a threat to the community. (Doc. 55, at 6).[5] Pine further argues that his possession of child pornography does not victimize children, (Doc. 55, at 6), and criticizes his attorney for failing to argue that the ratio

---

[5] Pine also asserts that counsel failed prevent the government from allegedly misleading the court regarding the availability and quality of psychiatric programs provided by the Bureau of Prisons. Pine has not presented evidence showing that the government's statements were inaccurate or that his counsel's failure to challenge the government's representations about psychiatric programs provided by the Bureau of Prisons was prejudicial to his sentence.

of child pornography to adult pornography in his possession rendered his offense insignificant. (Doc. 67, at 8).

In fact, counsel did raise objections to the PSR and presented witnesses on Pine's behalf regarding whether Pine was a threat to the community. Regarding Pine's assertions that counsel should have highlighted the ratio of child pornography in his possession, under 18 U.S.C. §§ 2251, 2252, and 2252A it is a crime to possess, receive, distribute or produce child pornography. Pine possessed 3,181 images of child pornography in various forms. (Sentencing Transcript, at 57). Pine's confession to investigators (PS, at 2 ¶ 10), his guilty plea (Doc. 24, at 1), his letter to Probation (Doc. 55, at 26), and his statements in open court (Hr'g Tr., at 12), contain admissions that he knowingly possessed child pornography. Therefore, the ratio of child pornography to adult pornography in Pine's possession is irrelevant under the law. Failure on the part of Pine's attorney to raise this meritless argument does not constitute ineffective assistance of counsel. See Werts v. Vaughn, 228 F. 3d 178, 203 (3d Cir. 2000); United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

Moreover, contrary to Pine's understanding, the possession of child pornography is not a victimless crime. In New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court recognized the significant harm to the victims of child pornography. Id. at 758; see also id. at 759 (stating that "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); Ashcroft v. Free Speech Coal., 535 U.S. 234, 249

(2002) (reiterating that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being"). The harm is not simply in the abuse itself, but also in the possession and continued circulation of images of that abuse. See Osborne v. Ohio, 495 U.S. 103 (1990) (holding that the First Amendment is not violated by a prohibition on the possession and viewing of child pornography).

Courts have found that end users or recipients of child pornography, including possessors such as Pine, cause the child victim to suffer in at least three ways: (1) the dissemination of images perpetuates the abuse; (2) the continued existence of the images represents an invasion of privacy; and (3) the consumers who view the images instigate the production of child pornography by providing an economic motive. See United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998); United States v. Tillmon, 195 F.3d 640, 644 (11th Cir. 1999) (continuing invasion of privacy and the creation of a market for child pornography); United States v. Goff, 501 F.3d 250, 259-60 (3d Cir. 2007) (consumer perpetuates and "'creates a market' for the abuse by providing an economic motive for creating and distributing the materials"); see also United States v. Church, 701 F. Supp. 2d 814, 820-22 (W.D. Va. 2010).

In the Third Circuit's view, "[c]hildren are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child

pornography. . . . There is nothing 'casual' or theoretical about the scars they will bear from being abused for [defendant's] advantage." Goff, 501 F.3d at 259.

> Consumers such as [defendant] who "merely" or "passively" receive or possess child pornography directly contribute to this continuing victimization. Having paid others to "act out" for him, the victims are no less damaged for his having remained safely at home, and his voyeurism has actively contributed to a tide of depravity that Congress, expressing the will of our nation, had condemned in the strongest terms.

Id.[6] Pine's objections are without merit and counsel's failure to raise such arguments did not fall below an objective standard of reasonableness.

---

[6] Pine argues that the child pornography sentencing guidelines are unfair and are the result of congressional directives instead of empirical studies by the sentencing commission. (Doc. 67, at 13, 15-16). He has provided the court with numerous articles on the subject, and the court's ability to impose more lenient sentences. (Doc. 61, at 7-21; Doc. 67, at 59-72). However, Pine's sentence falls within the applicable guidelines range, and the sentencing transcript clearly shows that the court gave meaningful consideration to the sentencing factors enumerated in 18 U.S.C. § 3553(a) in determining Pine's sentence. (See Doc. 51, at 83-88); see also United States v. Merced, 603 F.3d 203, 215-16 (3d Cir. 2011) (explaining the three-step sentencing process and stating that "the district court must furnish an explanation 'sufficient for [the appellate court] to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a)'" (quoting United States v. Levinson, 543 F.3d 190, 196 (3d Cir. 2008))); United States v. Tomko, 562 F.3d 558, 567-68, 574-75 (3d Cir. 2009). Additionally, Pine has already challenged the reasonableness of his sentence on direct appeal. See United States v. Pine, 318 Fed. Appx. 84 (3d Cir. 2009). A habeas motion is not the appropriate forum to re-litigate issues previously addressed on direct appeal. U.S. v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993).

To the extent Pine claims that, but for counsel's failure to present the evidence to the court, the court would have imposed a lower sentence, that claim is pure speculation. Sentencing determinations are within the discretion of the district court. Moreover, the vast majority of evidence attached to Pine's § 2255 motion post-dates his sentencing; therefore, counsel could not have presented it to the court.

### C. **Counsel's Alleged Failure to Cross-Examine and Confront Witnesses on Pine's Behalf**

Pine suggests that counsel should have cross examined government witnesses regarding the purported lack of evidence of "bought porn" and challenged the number of images allegedly possessed. (Doc. 55, at 15). Pine contends that government witnesses testified falsely to identifying 3,182 images of child pornography, suggesting that the true number in evidence should be 2,656.

Assuming *arguendo* that Pine possessed 2,656, and not 3,181 images, Pine possessed well in excess of 600 images of child pornography as charged. To the extent Pine is arguing that his sentencing guideline range would have been different using his claimed number of images, that argument is without merit. Pursuant to the United States Sentencing Guidelines § 2G2.2 defendants receive an offense level increase based upon the number of images of child pornography possessed. See U.S.S.G. § 2G2.2(b)(7). When the offense involves between ten and 150 images defendant receives a two level increase, between 150 and 300 images results in a three level increase, between 300 and 600 sentencing results in a four level increase, and 600 or more images results in a five level increase. Id. Whether Pine possessed 2,656 images or 3,181 images, a five level increase in the offense level was warranted. Any failure on counsel's part to object to the number of images did not result in any material prejudice to Pine.[7]

---

[7] In addition, the court notes that although the PSR attributed 3,182 images of child pornography to the defendant, not included in the calculation of the

Pine's allegation that defense counsel failed to confront witnesses on his behalf is simply without merit. At the sentencing hearing Pine's counsel cross-examined both of the government's witnesses, Agent Thew and Probation Officer Buckwalter. (Sentencing Transcript, at 63-64, 68-69). Pine was afforded his confrontation rights. Moreover, by pleading guilty Pine admitted to the crime and waived his right to trial where he would have been able to confront additional witnesses. (Doc. 28). Although Pine may be lamenting his decision to waive his rights, and plead guilty, he entered into the plea agreement voluntarily and with knowledge of the consequences. The plea agreement is enforceable. Mabry, 536 F.3d at 237. Pine suffered no deprivation of his Sixth Amendment rights.

> **D.** **Counsel's Choice of Witnesses at the Sentencing Hearing**

Pine accuses his attorney of being ineffective for failing to follow Pine's mandate regarding witness selection and questioning. (Doc. 55, at 15). Specifically, Pine asserts dissatisfaction with counsel for failing to call his parents as witnesses and for choosing to present his testimony via allocution instead of sworn under oath.

Attorneys should consult with their clients regarding strategic and tactical decisions, such as identifying what objections to make, arguments to advance, and which witnesses to call. Strickland, 466 U.S. at 688. However, counsel is not

---

number of images were 120 CDs and DVDs containing child pornography and four Inkjet paper boxes filled to capacity with printed images of child pornography. (See Doc. 51, at 83-84).

required to obtain the defendant's consent to every tactical decision. Taylor v. Illinois, 484 U.S. 400 (1988). In order for Pine's claim to be viable he would have to show that information gained from his parents as witnesses would have resulted in a different outcome, that is, he must show actual prejudice from his counsel's witness selection. See Hamilton v. Vasquez, 17 F. 3d 1149, 1157 (9th Cir. 1994).

Pine's habeas petition is devoid of such information. Pine's criticisms of counsel are conclusory and unsupported by the record. It is well settled that conclusory allegations without record support are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)).

Instead, the record reflects that counsel called qualified expert witnesses,[8] indulged Pine's wish to address the court, and selected the best available character witnesses who provided strong character evaluations.[9] Testimony from all of these witnesses illustrated a sympathetic picture of a man with relational mental health issues. Indeed, Pine characterizes his own life as a paucity of relationships. (Doc. 67, at 10). Defense counsel had a narrow field of witnesses from which to choose.

---

[8] Counsel for Pine called two expert witnesses: Dr. John Hume, a board certified psychiatrist, and Mr. Charles Keith Hill, a licensed family therapist. Both expert witnesses presented strong testimony in support of Pine, recommending individual therapy and no imprisonment. (Doc. 51, at 12, 25, 40).

[9] Defense counsel called Jeannie Ridenour and Erma Renner as character witnesses on behalf of Pine. Both women were supervisors at Pine's place of work and testified that he was a star employee who was quiet and kept mostly to himself. (Doc. 51, at 10).

In his closing statement at the sentencing hearing, after presenting expert and character witnesses on Pine's behalf, defense counsel argued for a variance from the guidelines based on Pine's isolated home life, his dominant mother, and his serious mental illness. (Doc. 51, at 72-73). Insofar as Pine argues defense counsel erred by not calling his parents as witnesses and by choosing allocution instead of open testimony on the record, it is clear that counsel, aware of all the facts, made strategic decisions calculated to benefit Pine. See Strickland, 466 U.S. at 690 (stating that "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengable"); see also United States v. McCoy, 410 F.3d 124, 135 (3d Cir. 2005) (noting that, although a reasonableness inquiry still applies, courts have been highly deferential to counsel's strategic decisions). Pine's assertions that his counsel's assistance fell below the proper measure of reasonable attorney performance are unsupported by the record. Defense counsel acted reasonably to protect his client. Effective advocacy is evidenced by the district court's sentence, which falls at the bottom of the guidelines range.

### E.  **Cummulative Effect**

Finally, Pine argues that the cumulative effect of his counsel's alleged errors prejudiced his defense. Pine's "cummulative effect" argument is futile given the court's conclusion that counsel was not ineffective. The record shows that defense counsel adequately explained the plea agreement, raised appropriate and timely objections to the PSR, called and questioned qualified experts and appropriate

13

character witnesses, and confronted witnesses on Pine's behalf.  Under the Strickland analysis counsel exercised customary legal skill, acting as a reasonable defense attorney in criminal proceedings.  Contrary to Pine's allegations, counsel's assistance was inerrant, professional and did not fall below an objective reasonableness standard.  Lacking proof of error, the court cannot assert that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

### III. Conclusion

For the foregoing reasons, Pine's § 2255 motion (Doc. 55) will be denied.  An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:  December 7, 2011

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:07 CR-0176** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **WADE RANDALL PINE** | : | |

## **ORDER**

AND NOW, this 7th day of December, 2011, upon consideration of the motion (Doc. 55) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, filed by Wade Randall Pine, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 55) is DENIED.

2. A certificate of appealability is DENIED. <u>See</u> 28 U.S.C. § 2253(c).


          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge